W. P. Mills v. Commissioner. Florence E. Mills v. Commissioner. Loretta M. Mills v. Commissioner.
W. P. Mills v. Commissioner
Docket Nos. 7667, 7668, 7669.
United States Tax Court
1946 Tax Ct. Memo LEXIS 100; 5 T.C.M. (CCH) 730; T.C.M. (RIA) 46204; August 19, 1946
*100 E. E. Adams, C.P.A., 1146 Henry Bldg., Seattle 1, Wash., for the petitioners. Bryant R. Burton, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These proceedings involve deficiencies and claims for overpayments in income taxes for 1941 as follows: Claimed
Deficiencies
Overpayments
W. P. Mills
$ 30.99
$106.22
Florence E. Mills
3,522.48
Loretta M. Mills
1,457.15
246.04
The sole question, common to all three dockets, concerns the fair market value on July 9, 1941 of certain shares of stock received by the petitioners on that date by distribution from a corporation in liquidation. Findings of Fact Petitioners W. P. Mills and Florence E. Mills are husband and wife residing at Seattle, Washington. Petitioner Loretta M. Mills, a sister of W. P. Mills, resides at Sitka, Alaska. The petitioners all filed their income tax returns for the fiscal year ended November 30, 1941 with the collector of internal revenue for the district of Washington. In about 1885 petitioner W. P. Mills joined his father in Sitka, Alaska, to assist him in the operation of a mercantile business. In later years petitioner broadened *101 the scope of his holdings to include a water system and a dock. These properties were owned by the Mills family through the Sitka Wharf and Power Company, a corporation organized in 1913. In 1929, petitioner sold his mercantile business but retained his other holdings. In the following year he became interested in a larger mercantile establishment and cold storage plant then owned by Booth Fisheries. In 1930, he organized the Sitka Cold Storage Company, a corporation, to acquire the properties and business from Booth Fisheries. Petitioner invested his personal funds in the stock of the new corporation and caused the Sitka Wharf and Power Company to invest enough of its surplus in that stock to assure that the controlling interest would rest in the Mills family. The balance of the stock was sold to and held by others. In 1941, the operating assets of the Sitka Wharf and Power Company were disposed of and on July 9, 1941, that corporation, in complete liquidation, distributed the stock of the Sitka Cold Storage Company to the petitioners herein as follows: W. P. Mills
9 shares
Florence E. Mills
214 shares
Loretta M. Mills
92 shares Each petitioner reported the *102 value of the stock at $125 in computing his income tax liability for 1941. The respondent has determined that the fair market value of the stock was $224 per share. During all periods pertinent to our determination the Sitka Cold Storage Company had 1,089 shares of par value $100 capital stock outstanding. The petitioners herein owned a total of 588 shares in 1941 after the liquidation of the Sitka Wharf and Power Company. On January 1, 1937, the books of the Cold Storage Company reflected capital stock at $108,900 and a surplus of $46,840.71, making a total of $155,740.71 and indicating a book value of $143.01 per share. By 1941 the surplus had increased to some $89,000 and the book value per share had increased to approximately $182. Continued growth resulted in a surplus on January 1, 1943 of nearly $117,000 and a per share book value of over $207. The average per share earnings over the seven-year period 1937 to 1943, inclusive, was $22.62. The per share earnings in 1937 was $18.64; in 1941, $23.66 and in 1943, $25.26. The average dividend paid during the seven year period was $10 per share. In 1937, the company paid $10; in 1941, $15 and in 1943, $5. After the beginning of *103 war with Japan in 1941, business in Alaska generally increased. After 1941, more people were in the territory served by the Sitka Cold Storage Company and there was a greater demand for its merchandise and services. There were no sales of the stock in 1941. In 1942, petitioner acquired 5 shares at $125 per share from the liquidating trustee of the Pyramid Packing Company. Other stockholders had refused to purchase the 5 shares at that price. Fifteen shares were exchanged in 1943 at $130 per share. There has never been a great demand for stock of this kind in Alaskan companies. Investors in that vicinity expected to obtain a return of about 20 per cent. The parties have stipulated that on April 6, 1943, the petitioners sold their entire stock of the company, comprising more than 50 per cent of the outstanding shares, in an arm's length transaction for $122 per share. The fair market value of the stock in question on July 9, 1941, was $125 per share. Opinion ARUNDELL, Judge: The stock in question had been closely held for a long time. It has never been listed on an Exchange and there is no record of bid and asked prices, or of any actual sales in 1941. The sales which were *104 made in 1942 and subsequently indicate a rather steady value of about $125 per share although they are not timely enough to control the issue. By the use of various formulae under which average earnings were capitalized at rates of from 8 to 10 per cent and dividends at rates of from 5 to 6 1/4 per cent the respondent has determined a value of $224 per share. However, such computation loses its force in the light of testimony to the effect that investments in and around Sitka were expected to yield a return of about 20 percent. The respondent introduced no evidence. The position of the company was stronger in 1942 and 1943 than at any time here pertinent. Its asset value was greater and its earnings, although lower in 1942 than in 1941, were higher in 1943 than at any time in the seven year period with the exception of 1940. The respondent takes the view that the war depressed the value of the stock. All of the evidence is to the contrary. Business in and around Sitka was better during the war than prior thereto according to witnesses familiar with conditions in that country before and during the war. Moreover, the fact remains that only a year or two after having received the *105 stock in question and in one of the company's most successful years up to that date, the petitioners disposed of their entire interest at a price of $122 per share. The block sold by them represented something more than 50 per cent of all the outstanding stock. Upon all of the factors and circumstances here present, we have found that the value of the stock on July 9, 1941, was not more than $125 per share. It is so held. Decision will be entered under Rule 50.